Our third case this morning is Fiorentini v. Paul Revere Life Insurance Company. Mr. Jacob. Good morning, Your Honors. My name is Michael Jacob, and along with my partner Nick Kirk, we are representing the plaintiff and appellant in this matter. We are seeking the reversal of the district court's order granting the defendant's motion for summary judgment and the order denying our motion for summary judgment. Most of the material facts in this case are undisputed. The applicable law standard with respect to interpreting occupation is undisputed. The case arises out of a claim by the plaintiff for total disability benefits under a long-term disability income policy issued by Paul Revere. Our client, Mr. Fiorentini, is essentially a self-employed sole practitioner, sole employee. He operates under his corporation. He's a 100 percent owner. He is the only employee who generates revenue in terms of finding sales. He founded the company in 1992. He has an assistant programmer that works with him. And in the year of 1998, he was unfortunately diagnosed with a basal cell carcinoma. He treated that for 10 years, and in 2008, it resulted in the fact that his right ear had to be amputated, and all internal organs in his right ear were removed, and he was fitted with a prosthetic device. At that point, he filed a long-term disability policy or claim with Paul Revere, and they accepted the claim, and they paid him long-term disability benefits for five years. During that five-year period, Mr. Fiorentini was not able to conduct sales on the face-to-face basis in the manner in which he built his company, and that is the core issue in this case. The issue in this case is what is his occupation. Paul Revere takes the position that if you're a salesman, you can sell anything. Mr. Fiorentini is a specialized type of person who works face-to-face. He communicates with people, he goes to trade shows, he goes to seminars, he makes presentations, and as a result of the sickness that he suffered as a result of his cancer, he has not been able to do it. The medicals that we have produced are pretty much rock solid on that. He has 100% hearing loss in his right ear. Number two, a hearing aid will not help him. He has no hearing organs. And number three, he cannot, which is his largest problem in terms of working, is he can't localize sounds in a large room. Yes, he can come into an office and talk to you one-on-one, but he can't go into a factory, he can't go into a seminar, he can't go to a trade show and have a face-to-face meeting with a client. He filed his claim, he was paid for five years, the insurance company put him on surveillance, and then they cut him off. Why couldn't he, he gave a presentation about aviation, right? Why couldn't he do similar things with respect to sales? Well, that's not, first of all, that's not selling, and that's not as large of a crowd, and that is his hobby. And that's where I feel the district court, in my words, went off into the weeds. What he can do in terms of outside his occupation is not the point. The point here is this is a contract claim for a long-term disability claim under his occupation that existed on the day of death. The fact that he is not in a coma, the fact that he can still do other things in his life, doesn't mean he is not totally disabled. But isn't one of the issues, I mean, he's alleging that one of these important facets of his job, sales, that he's unable to do. Yes. And he's saying he's unable to do it because, as you said, he can't localize sound, and in a large room it's difficult, so he can't conduct face-to-face meetings the way he used to. And surely it's relevant whether, surely his claim that he's not able to do that in the sales context, it bears on that claim whether he's able to do that in other contexts, conduct these large seminars. In a sense, I agree with you, Your Honor, and that's why we had Dr. Julie Bowes evaluate this case, and she came to the opinion, given the nature of the occupation, the stresses of it, the duties and responsibilities that he has, he cannot perform his occupation in the manner to which he performed it on the day he was disabled. Now, the fact that he can go and talk to his pilot group, which is a much smaller group, or he can, I think the district court also noted he played recreational hockey, the fact that he could still go out to dinner with people and talk to somebody one-on-one, is an entirely different environment than actually going out and doing something that's a hobby. For example, me, coming here and standing before this honorable court, is a lot different than me being in my close confines of my office talking to one of the lawyers in the office. I analogize this case to pretty much, say, a litigator. I'm a lawyer, but I try cases, I practice litigation. If, heaven forbid, I were to contract throat cancer, okay, and my larynx was taken away, I could no longer talk. I mean, there are probably some people that think lawyers that don't talk might be a good thing, but I know some physicians that feel that way. But I could still practice law, but I'm totally disabled from being a litigator. I can't come to court and cross-examine witnesses. I can't come to court and make an argument before this panel, but I can still write the brief. I can still do the legal research. I can still sort through the documents. I can do all those sort of things. But if you were also talking to your aviation hockey group but saying you couldn't talk to a jury, then that would cast some doubt on whether your throat, you know, whether your larynx was really. . . Well, I think in a recreational conversation, Your Honor, as opposed to your occupational conversation, is eons apart. If I were to sit here and discuss politics with you or discuss baseball with you or discuss football with you, that would be a totally different type of conversation than pleading a case before you or going out and soliciting a new customer that I'm meeting for the first time. Talking with a friend, talking with a family, talking with a colleague is a far different enterprise and certainly in a different venue than I otherwise would do if I were out trying to make a living. So I think that is a very valuable and important distinction here because we're here to compensate him for the loss of his income due to his sickness which resulted in his disability, not to compensate him because he can still talk to his buddies at the flying school or wherever he goes or his hockey player friends. And that's why he filed the claim. And it's interesting, too, that I think we have to take into account the seriousness with which hearing loss is. I mean, for example, if we look at the disability policy, the policy contains a presumption that if you have hearing loss, total hearing loss in both ears, you are presumptively, that's section 2.5 of the policy that's at issue, you are presumptively to be totally disabled. I'm not suggesting 100% hearing loss is a total disability in one ear, but I don't think we can ignore and try to minimize the fact, the way Paul Revere is doing here, that 100% total hearing loss in your right ear together with the prosthetic device means you can still go out and make sales. What Paul Revere wants my client to do is he wants them to do business under the Internet, mail out postcards, get brochures or the district court even noted you can hire a marketing representative. That's not the way the plaintiff built his business. That was not the occupation that the plaintiff was doing on the date he was disabled. That is the policy he purchased in 1998 that you were going to insure my disability from my occupation as it existed on the date of disability. Well, he's president of the company. I'm sorry. He's president of the company, and the only duty of that occupation that he's claiming is impaired here is face-to-face sales. Correct. He also does, and that's six to eight hours a week. Okay. So he's got four other important duties that he identified in the claim, consulting meetings seven to ten hours a week, programming 15 to 25 hours a week. That's his predominant duty, and then two to three hours of administrative work. Okay. And the policy requires for the definition of total disability that he be unable to perform the important duties of his occupation. So this is just a fraction of those important duties. Well, I don't think that the Cheney case and the McFarland case, I submit to the court, it's not the number of hours that you do on each important duty. It's the quality of the important hours. He is the sole revenue driver of this company, which is his one-man company. The fact that he calls himself the president, he's still a single person who's working for himself. Actually, the McFarland case talks about an inability to perform a substantial and material number of the duties, to the effect that it precludes continuation of employment in the position held before the disability. Okay. And if the person who is 100% responsible for generating new business to keep the enterprise or keep his livelihood going is shut down, that's the most important duty, or to use the case language, that's the core and essential duty of any sole proprietor or one-man corporation, in my opinion. The fact that he gets a passive income from ancillary services where the computer programmer who works for him services an existing account and does a bug fix or does a computer software upgrade, that's not new sales. Mr. Fiorini doesn't do that. Mr. Fiorini is out in the field trying to get new business, and yes, he does service his new business as well as existing customers, but the core and essential duty here is the fact that he can make these face-to-face sales, and that is the revenue driver of this entire enterprise. He doesn't do business on the Internet. He doesn't mail out brochures. He doesn't do nothing. Your time has expired, Counselor. Oh, I'm sorry. Okay. Thank you. Thank you. Ms. Herring. May it please the Court. My name is Jacqueline Herring, and I represent the Appley, the Paul Revere Life Insurance Company. The district court correctly applied the controlling precedent from McFarland and Chaney and applied that to the undisputed facts in this case and correctly granted summary judgment in favor of Paul Revere. This policy defines total disability as unable to perform the important duties of your occupation due to a sickness or injury, and what this court's precedent in McFarland establishes is that what this policy language means is that you need to be unable to perform a sufficient number of your duties such that you are precluded from continuing in the pre-disability employment, and that is simply not the case here. Mr. Fiorentini cannot establish that he is unable to continue in his pre-disability occupation. In fact, he does continue in his pre-disability occupation, and it's not simply a gratuitous title of president. He is, in fact, acting and actively engaging as the president of his company, Panatac. He continues to manage and direct all of the business operations, and he has sole authority to do so. So he has, in fact, continued in exactly the same occupation as he held pre-disability, and he is also able to perform the important duties of that occupation. He is admittedly able to perform three of the four duties. He admits that he can perform his administrative work, managing the company finances, supervising his employees. He admits that he is able to do his computer programming duty, which, as the court pointed out, was more than half his time pre-disability, and he admits that he can engage in consultations and meetings, which he described during the claim as this involves meetings and face-to-face consultations. So he admits that he can engage in face-to-face consultations, yet asserts the contrary position that he is unable to engage in face-to-face sales and perform his sales duty, and there's simply no evidence of that. He testified that he regularly, on a weekly basis, meets face-to-face with customers. No distinction why he couldn't do these same face-to-face meetings with potential customers. His surgeon confirmed that there is no medical reason that he cannot engage in in-person meetings. His retained vocational expert, Ms. Bose, she confirmed, she agreed, that he is able to conduct face-to-face meetings. So there is simply no evidence in the record that supports Mr. Fiorentini's statement that he is unable to engage in face-to-face sales work. And moreover, his sales duty prior to disability was not limited in that way. It wasn't limited to simply face-to-face meetings with potential customers. His sales duty as he described it during his deposition and at meetings with field representatives from Paul Revere included going to his client locations to discuss existing and new products with clients, upsell to his current clients. He described that he previously hired marketing consultants to assist with his sales duty. He had previously hired an employee for a period of time to assist with the direct sales and calling that was involved. He actively sent out promotional postcards to try to drum up leads and have new business. These are all things that he did that he described in his deposition or that are documented in the records. So his sales duty pre-disability was not limited to simply in-person sales with potential new customers. There were a variety of activities and tasks that went into his sales duty. If face-to-face selling was required for his job, if that defined the sales function of his job, which is one of the four important duties that he identified in his claim, would that make this qualify for a total disability? Not under the facts that are presented here, Your Honor, because, again, number one, there's no evidence that he can't in fact do that face-to-face sales activity. Well, right. Let's assume that there was, that he couldn't do face-to-face selling. Would that make this a total disability case or would that be the kind of thing that would be covered by the residual disability clause? It would not be total disability. It would potentially be covered by the residual disability clause. And the reason why it wouldn't be total disability is what the case law says. Total disability means you can't continue in your pre-disability occupation. He has continued in his pre-disability occupation, irrespective of any face-to-face sales. But if face-to-face sales were an essential component, like a short stop, like the barber, so is it your position then explain why face-to-face sales wouldn't be an essential component because even if it's only one of his duties, I mean, if that's the essential core, then he would be disabled, right? Totally disabled. If the inability to do sales precluded him from engaging in the employment. And that's what the distinction is between an essential duty and simply an important duty. Being a computer programmer, that's an important duty for him. And he would certainly be here arguing if he couldn't do computer programming, well now I've got nothing to sell, so I'm disabled. But you don't parse the occupation duty by duty by duty. It's on the whole, when we look at these important duties, McFarland says that what you're looking at is he unable to perform a sufficient number, which may be just one, it may be more than that, but is he unable to perform a sufficient number such that he cannot continue in his predisability occupation. And Mr. Fiorentini in this case has absolutely continued in his predisability occupation. He has continued in that occupation. He maintains the ability to perform all of the duties of that occupation. And the idea that he could continue to work in the same occupation and simply have some portion of his sales duty that he would be unable to do and thereby qualify for total disability is contrary to McFarland, it's contrary to common sense, and it's also contrary to the terms of the policy. The residual disability clause is specifically designed to provide income replacement for an insured who maintains the ability to continue working in his occupation, but because of the residual impact of the sickness or injury, suffers a loss of income. That's exactly what residual disability is designed to encompass. But to say that somebody is totally disabled when they continue to work in exactly the same occupation flies in the face of all of the case law as well as the specific language of the policy. Mr. Fiorentini in this case clearly continues to perform his same predisability occupation as president. He maintains the functional capacity, and that's the key, not whether he is in fact going out and selling, but does he have the functional capacity to do so. And he does have the functional capacity to do so. He engages weekly in face-to-face meetings. His surgeon says there's no medical reason why he cannot engage in face-to-face meetings. He has demonstrated his ability to do that, both with face-to-face meetings with customers as well as giving a presentation to his pilots group. And he continues to engage in all of those duties. He continues in the same occupation. He has the ability to perform the duties of that occupation. And as a matter of law, he has failed to satisfy the policy's definition of disability, and therefore the district court's decision granting summary judgment should be affirmed. Thank you. Mr. Jacob, your time had expired, but I'll give you a minute if you have anything further to say. Okay, I'll make two quick points. I appreciate the court's indulgence. Number one, Mr. Fiorini has never claimed that he could not continue to be an administrator, and in support of that I would direct the court's attention to the Lenore v. Providence case that the Sixth Circuit decided where Dr. Lenore was a practicing dentist, but he also was an entrepreneur, and the fact that he couldn't practice dentistry and could continue to be an entrepreneur did not prevent him from being totally disabled from the practice of dentistry. Number two, I would direct the court's attention to Dr. Bose's report at record number 35, Exhibit 27, where she categorically says, and I know we're not supposed to read these things, but it's one sentence. I'd like to read it into the record. Mr. Fiorini is totally disabled due to the inability to perform essential job tasks to include marketing and sales, writing up new software, being able to service accounts on an on-call basis, networking, learning new computer technology, and attending seminars, classes, and working on a full-time basis in a highly competitive industry, which is exactly what we're saying here is he cannot perform sales functions. I got a zero here in the manner in which he did on the date of his disability, and I thank the court for its time. All right. Thank you. Our thanks to both counsel. The case is taken under advisory.